*1408 OPINION.
Siefkin:
All of the petitioners were directors and employees of the corporation, which had a fiscal year ended April 30, 1921. During that fiscal year of the corporation certain salaries were voted to the petitioners, but with the limitation that withdrawals against the salaries could be made only as the needs of the business permitted. The corporation was not prosperous and was heavily indebted to banks and to its principal stockholder and president, and withdrawals were made only for a portion of the amounts voted. Such amounts that were actually paid are not in controversy, the petitioners all being upon the basis of cash receipts and disbursements in reporting income and making their returns on a calendar year basis. The amounts which were not withdrawn are the subject of this controversy, the respondent’s contention being that the transaction with the corporation’s bank centering around June 1,1921, resulted in converting the accounts of the petitioners with the corporation into income to the petitioners even though respondent concedes that such amounts were not income up to that time. It is necessary, therefore, to examine into the nature of the transactions around June 1, 1921.
An audit of the corporation’s books by its auditors late in April, 1921, disclosed an unfavorable financial position, and this situation being made known to the bank to which the corporation was heavily indebted, it was suggested by the president of the bank that the accounts of the corporation be recast so that the amounts shown as credited to the petitioners be deferred to the right of the bank to obtain its money. To this all of the petitioners agreed. It was also suggested that the recasting of the accounts of the corporation be done in such a manner as to permit rediscount of the corporation’s paper under the Federal Reserve system. The various petitioners then, in order to carry out this suggestion of the bank, whether as individuals or as directors and officers (although they signed as directors and officers) is not conclusive, agreed by letter to the bank to consider the credits due them for unpaid salaries as loans subject to the right of prior payment by the bank. Shortly thereafter the auditors for the corporation changed the audit to conform with this agreement and changed the books of the corporation so as to carry the accrued salaries into a so-called “ loan account,” although an actual loan by Elliott, one of the petitioners who was also president of the corporation, was carried in another account known as “ deposit account.” The letter to the bank, the change in the audit of the corporation’s affairs and the change of the corporation’s books are the facts relied on by the respondent as changing the situation between the corporation and the petitioners so as to render petitioners liable to tax upon the unpaid but accrued salaries.
*1409 In determining tbe deficiency the respondent made this statement:
The amount of accrued salary undrawn on June 1, 1921 at which time you acknowledge such amount as a loan to the corporation and waived your right of preference should be included as income for 1921.
We can not agree with this contention. It seems quite clear that, although the petitioners signed a letter using the word “ loan,” and although auditors of the company treated the amounts of accrued salaries as though they were loans to the corporation, the transaction, in fact, did not constitute a loan. All of the petitioners who were still living testified as to the purpose of the letter to the bank and to complete ignorance of the change in audit and the books as the result of the letter. It is clear from their testimony and from all of the circumstances surrounding the transaction that it did not result in making available to the petitioners any additional income from that already received. On the contrary, it appears that the petitioners were in a less advantageous position than before. Before the conference with the bank and the letter to the bank they had an outstanding credit on the books subject to the needs of the business. After June 1,1921, such amounts were inferior to claims of the bank. Under similar circumstances we have held in many cases that the petitioners were not in receipt of income constructively or otherwise. See Appeal of Walter L. Hopkins, 2 B. T. A. 549; Appeal of Samuel Graydon, 2 B. T. A. 552; Appeal of A. L. Englander, 1 B. T. A. 760; Appeal of Nicholas J. Maisel, Jr., 2 B. T. A. 66; Appeal of Edward J. McDonnell, 4 B. T. A. 49.
At the hearing it was conceded by the petitioners that certain amounts actually drawn by petitioners, as set forth in our findings of fact above, were properly taxable as income.

Judgment will be entered on 15 days' notice, under Rule 50.